**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | |
|---|---|
| IN RE: § | |
| § | Chapter 11 |
| **Cross-Roads II Enterprises, Inc.** § | |
| **f/k/a Cross-Road Enterprises, Inc.,** § | |
| **PO Box 2754** § | |
| **Mission, TX 78572** § | |
| **74-2724752** § | Case No. 14-70428 |
| § | |
| § | |
| **Debtor.** § | |
| § | |

## OBJECTION TO DEBTOR'S DISCLOSURE STATEMENT

RREF II CB III-TX CRE, LLC (together with its direct affiliates, the "**Lender**"), as successor-in-interest to Compass Bank, and a secured lender in the above-captioned chapter 11 bankruptcy case, hereby files this *Objection to Debtor's Disclosure Statement* (the "**Objection**") and would respectfully show this Court as follows:

### I. BANKRUPTCY PROCEEDINGS

1. On August 4, 2014 (the "**Petition Date**"), Cross-Roads II Enterprises, Inc. (the "**Debtor**") filed its voluntary petition under chapter 11 of the Bankruptcy Code and commenced the above-captioned case (the "**Bankruptcy Case**").

2. On December 2, 2014, Debtor filed its *Chapter 11 Small Business Disclosure Statement* [Docket No. 55] (the "**Disclosure Statement**"), along with its *Chapter 11 Small Business Plan* [Docket No. 54] (the "**Plan**").

3. On December 4, 2014, this Court entered an order setting a hearing regarding the Disclosure Statement for January 21, 2015 at 9:00 a.m. (CST) [Docket No. 56]. The deadline for filing objections to the Disclosure Statement is January 14, 2015.

4. Barbara C. Jue represents the U.S. Trustee in the Bankruptcy Case. There is no Chapter 11 Trustee appointed in the Bankruptcy Case. There is no committee appointed in the Bankruptcy Case.

## II. BACKGROUND FACTS

5. Lender is a secured creditor in the Bankruptcy Case. Lender filed its secured proof of claim (the "**Claim**") in the amount of $404,989.15 on January 8, 2015 as Claim No. 7-1 of the Claims Register.[1]

6. As more fully set forth in the Claim, Lender is the owner and holder of a Real Estate Lien Note ("**Note**") dated February 20, 1996, executed by Debtor in favor of First State Bank & Trust Company of Mission, Texas in the original principal amount of $400,000.00.

7. The indebtedness evidenced by the Note due and owing from Debtor to Lender is secured by certain real property being described in the Loan Documents as: (i) "1.2099 acres of improved land," commonly known as "Lots Ten (10) and Eleven (11), Block Two (2), Mission Groves Estates, Hidalgo County, Texas" ("**Tract 1**"); and (ii) "a 11,285 square foot (.0259 acres) tract of land, more or less, out of lot ten (10), block two (2), Mission Groves Subdivision, an addition to the City of Palmview, Hidalgo County, Texas, according to a map or plat recorded in volume 5, page 21, Map Records, Hidalgo County, Texas" ("**Tract 2**"). Tract 1, Tract 2, and any and all additional collateral securing the Note are collectively referred to herein as the "**Collateral**."

8. Tract 1 is more particularly described in that certain Deed of Trust executed by Debtor in favor of First State Bank & Trust Company, dated February 20, 1996 and filed in the

---

[1] **Exhibits 1-16** attached to the Claim are collectively referred to herein as the "**Loan Documents**" and incorporated herein for all purposes. *See* FED. R. BANKR. P. 9032; FED. R. CIV. P. 10(c).

**OBJECTION TO DEBTOR'S DISCLOSURE STATEMENT** - Page 2

real property records of Hidalgo County, Texas on March 28, 1996 at Document No. 513348 ("**Deed 1**").

9. Tract 2 is more particularly described in that certain Deed of Trust executed by Debtor in favor of Texas State Bank, dated August 2, 2007 and filed in the real property records of Hidalgo County, Texas on August 29, 2007 at Document No. 2007-1800168 ("**Deed 2**").

10. The Note, Deed 1, Deed 2, and corresponding Loan Documents were assigned from Compass Bank, as successor-in-interest to Texas State Bank, to RREF II CB Acquisitions, LLC by that certain Assignment of Loan Documents dated May 22, 2013 and recorded in the official records of Hidalgo County, Texas on July 3, 2013 at Document Number 2013-2427680.

11. The Note, Deed 1, Deed 2, and corresponding Loan Documents were assigned from RREF II CB Acquisitions, LLC to Lender by that certain Assignment of Loan Documents dated October 30, 2013 and recorded in the official records of Hidalgo County, Texas on November 4, 2013 at Document Number 2013-2461298.

12. The Debtor is in default under the terms of the Loan Documents due to, *inter alia*, its failure to remit payments to Lender as set forth therein. The indebtedness reflected in Lender's Claim is fully matured under the terms of the Loan Documents and due in full.

13. Pursuant to the Loan Documents, Lender holds a contractual lien on rents and revenue produced from the real property comprising the Collateral. All such rents and revenue from Lender's Collateral are collectively referred to herein as the "**Rental**."

14. Pursuant to this Court's *Interim Agreed Order Authorizing Use of Cash Collateral* [Docket No. 47] (the "**Cash Collateral Order**") entered on October 23, 2014, the contractual liens on the Collateral attach to the Debtor's receipts and revenues and therefore constitute "cash collateral" as described in 11 U.S.C. § 363(a).

15. The Cash Collateral Order authorized the Debtor to use Lender's cash collateral to pay ordinary direct costs of operation in the ordinary course of the Debtor's business through December 31, 2014.

16. The Cash Collateral Order further granted Lender a continuing replacement security interest in all pre-petition Collateral of Lender and property acquired by the Debtor after the Petition Date.

### III. GROUNDS FOR OBJECTION

#### A. Legal Standard

17. Title 11 U.S.C. § 1125(b) requires, as a precondition to the solicitation of an acceptance or rejection of a plan under chapter 11, that there be transmitted to parties holding a claim or interest in property of the estate, among other things, "a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." *See* 11 U.S.C. § 1125(b). "Adequate information" is defined as:

> ... information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records ... that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan ....

11 U.S.C. § 1125(a).

18. The Bankruptcy Code's rather imprecise definition of "adequate information" has led several courts to establish a non-exclusive list of factors, disclosure of which may be necessary to meet the statutory requirement of "adequate information." The relevant factors may include:

    (a)    the events which led to the filing of a bankruptcy petition;

    (b)    a description of the available assets and their value;

(c) the anticipated future of the company;

(d) the source of information stated in the disclosure statement;

(e) a disclaimer;

(f) the present condition of the debtor while in chapter 11;

(g) the scheduled claims;

(h) the estimated return to creditors under a chapter 7 liquidation;

(i) the accounting method utilized to produce financial information and the name of the accountants responsible for such information;

(j) the future management of the debtor;

(k) the chapter 11 plan or a summary thereof;

(l) the estimated administrative expenses, including attorneys' fees and accountants' fees;

(m) the collectability of accounts receivable;

(n) financial information, data, valuations, or projections relevant to the creditors' decision to accept or reject the chapter 11 plan;

(o) information relevant to the risks posed to creditors under the plan;

(p) the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers;

(q) litigation likely to arise in a non-bankruptcy context;

(r) tax attributes of the debtor; and

(s) the relationship of the debtor with the affiliates.

*See In re Metrocraft Publishing Services, Inc.*, 29 B.R. 567 (Bankr. N.D. Ga. 1984); *In re U.S. Brass Corp.*, 194 B.R. 420 (Bankr. E.D. Tex. 1996); *In re Ferretti*, 128 B.R. 16 (Bankr. D.N.H. 1991). Disclosure of all factors is not necessary in every case. *See U.S. Brass Corp.*, 194 B.R. at

425. The court should consider various factors according to the particulars of the case at bar. *See Ferretti*, 128 B.R. at 19.

### B. Lender's Objections to Debtor's Disclosure Statement

19. Pursuant to 11 U.S.C. § 1125(b), the Court should deny approval of the Debtor's Disclosure Statement as it fails to provide adequate information. Specifically, the information provided in the Disclosure Statement fails to enable a hypothetical investor of Lender's class to make an informed judgment concerning its decision to accept or reject the Debtor's Plan.

20. In particular, the Debtor's Disclosure Statement fails to provide an adequate description regarding the following factors: (a) the anticipated future of the company; (b) estimated return to creditors under a chapter 7 liquidation; (c) the accounting method utilized to produce financial information; and (d) the collectability of accounts receivable. Additionally, the Debtor's Disclosure Statement generally lacks a sufficient explanation of the Plan's probability for success, and fails to explain the conclusions stated therein. Each of the factors are addressed separately in further detail below.

*(a) The Anticipated Future of the Company*

21. Page four (4) of the Disclosure Statement provides that the primary event leading to the filing of this Bankruptcy Case was the maturity of the Note, and Debtor's inability to secure refinancing and/or meet its obligations to Lender. Additionally, Debtor's business (leasing residential and commercial property) has suffered as the real estate market in which the Debtor's properties are located has long been "depressed." *See* Disclosure Statement, Ex. E.

22. The Debtor's Disclosure Statement completely fails to explain the Debtor's strategy for future success given the Debtor's prior inability to sell or refinance the Collateral, and the depressed nature of the Debtor's business.

23. In sum, the Debtor has failed to provide any forecast on its projected financial wherewithal to solve its pre-petition operating shortfalls. Without further explanation as to these matters, Lender cannot be adequately informed as to the Debtor's anticipated future, and is not able to make an informed decision to vote on the Plan.

*(b) The Estimated Return to Creditors Under a Chapter 7 Liquidation*

24. The Disclosure Statement fails to provide an adequate analysis of a chapter 7 liquidation.

25. The attachment to the Disclosure Statement marked as Exhibit E lists certain assets of the Debtor, and states that liquidation would result in diminution to general unsecured creditors as compared a successful chapter 11 reorganization. However, the Disclosure Statement does not provide any information concerning the return to creditors under a chapter 7 liquidation, apart from a conclusory statement that the net value of the assets would likely be abandoned or greatly reduced in value under that scenario.

26. The Disclosure Statement therefore fails to provide more than an estimated comparison of recovery under chapter 11 as compared to chapter 7, and Lender is unable to make an informed decision regarding acceptance or rejection of the Plan without a full understanding of the liquidation alternative.

27. The Debtor must satisfy the "best interest of creditor's test" under § 1129(a)(7). The Debtor cannot meet this confirmation prerequisite without actual projections under a chapter 7 liquidation compared to the proposed distribution to creditors under its Plan. The Disclosure Statement fails to provide this information.

*(c) The Accounting Method Utilized to Produce Financial Information*

28. Although the Debtor attaches a summary of post-petition operating reports, information regarding cash on hand as of the effective date of the Plan, projections of cash flow and earnings for the post-confirmation period, and the Monthly Operating Report for the month of October 2014, the Disclosure Statement fails to contain the accounting method used to produce those analyses, projections, and figures. Particularly, the Debtor fails to provide any indication of how it projected post-confirmation cash flow and earnings at Exhibit G.

29. Indeed, the document marked as Exhibit G lacks any explanation of the figures provided therein. The Debtor cannot meet its feasibility requirement without firm financial data supporting its projections. Without actual data and recognized accounting methodology to support its financial projections, Lender cannot rely on the Debtor's disclosed values in the Disclosure Statement to make an informed decision regarding the Plan.

*(d) The Collectability of Accounts Receivable*

30. The Disclosure Statement fails to provide any description or details concerning the collectability of accounts receivable. The Debtor's monthly operating reports for October and November 2014 list values for accounts receivable, but fail to explain the collectability of those accounts, such as payment history for its customers.

31. The Debtor's ability to collect its accounts is critically important as Lender holds a perfected lien on the Debtor's Rentals. Lender's security interests will not be adequately protected without assurance that the Debtor is efficiently collecting its Rentals in a commercially reasonable fashion. Without any indication of the anticipated value realizable from the Debtor's accounts, Lender is not able to make an informed decision regarding acceptance or rejection of the Plan.

*(e) General Lack of Detail*

32. Generally, the Disclosure Statement lacks sufficient detail regarding the Plan. The purpose of a disclosure statement is not to assure acceptance or rejection of a plan, but to provide enough information to interested persons so they may make an informed choice between two alternatives. *U.S. Brass Corp.*, 194 B.R. at 423.

33. The Disclosure Statement fails to provide a realistic assessment of the ongoing viability of Debtor's post-confirmation business. Furthermore, the Disclosure Statement does not satisfy the adequate information requirement because much of the Disclosure Statement is copied verbatim from the Plan, or concerns only the legal process of plan confirmation. These provisions do not assist Lender in its decision to accept or reject the Plan.

34. Critically for Lender, the Disclosure Statement explains that the Plan proposes to pay Lender's secured Claim – which is $404,989.15 – in full from the sale of Lender's Collateral, through refinancing, or by providing a deed in lieu of foreclosure in full satisfaction of the Claim. The Disclosure Statement also values Lender's Collateral at $300,000.00. The Disclosure Statement fails to explain how the full value of Lender's Claim will be paid from the proposed sale, through refinancing, or by providing a deed in lieu of foreclosure when the Collateral's value is far below the amount of Lender's Claim. Without a detailed explanation of the logistics surrounding the Collateral's disposition through the Plan process, the Disclosure Statement fails to provide the Lender with adequate information.

35. Based on the above, this Court should not approve the Debtor's Disclosure Statement as it fails to enable a hypothetical investor of Lender's class to make an informed judgment concerning its decision to accept or reject the Debtor's Plan. As such, the Disclosure Statement does not satisfy the requirements of the Bankruptcy Code.

## IV. <u>REQUEST FOR RELIEF</u>

Lender respectfully requests that, upon hearing of this Objection, the Court take the following action:

(1) determine that the Debtor's Disclosure Statement does not contain adequate information as required by 11 U.S.C. § 1125(b), and that the Court, therefore, deny approval of the Disclosure Statement;

(2) or, in the alternative, direct that the Debtor immediately re-file the Disclosure Statement with sufficient information in compliance with Lender's requests; and

(3) grant such other and further relief as is just and equitable.

[*Signature page follows*]

Dated:  January 14, 2015

      Respectfully submitted,

      **GARDERE WYNNE SEWELL LLP**

      */s/ Matthew Pyeatt*
      Robert T. Slovak (TX 24013523)
      Thomas Scannell (TX 24070559)
      Matthew J. Pyeatt (TX 24086609)
      1601 Elm Street, Suite 3000
      Dallas, Texas 75201
      Telephone: 214-999-4289
      Facsimile: 214-999-4667
      rslovak@gardere.com
      mpyeatt@gardere.com

      **RREF II CB III-TX CRE, LLC**

## CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the foregoing Objection was served electronically by the Court's ECF/PACER system on January 14, 2015.

      */s/ Matthew Pyeatt*
      Matthew J. Pyeatt

Gardere01 - 6541392v.3